UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED - GR
November 17, 2010 3:55 PM
TRACEY CORDES, CLERK
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY mrs / SCANNED BY fmw 11/18

QIC

**Victoria Nelson,**

       Plaintiff,

  v.

**MS Services, LLC,** a Wyoming limited liability company,

       Defendant.

Hon.

1:10-cv-1142
Gordon J. Quist
US District Judge

**Complaint**

**I.**   **Introduction**

1.   This is an action for damages, brought against a debt collector for violating the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and the Michigan Occupational Code ("MOC"), M.C.L. § 339.901 *et seq.*

**II.**   **Jurisdiction**

2.   This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

**III.**   **Parties**

3.   Plaintiff Victoria Nelson is a natural person residing in Kent County, Michigan. Ms. Nelson is a "consumer" and "person" as the terms are defined and/or used in the FDCPA. Ms. Nelson is a "consumer," "debtor" and "person" as the terms are defined and/or used in the

1

MOC.

4. Defendant MS Services, LLC ("MSS"), also doing business as Mountain States Adjustment, is a Wyoming limited liability company, purportedly with offices at 123 West 1st Street, Suite 430, Casper, Wyoming 82601. The registered agent for MSS in Michigan is The Corporation Company, 30600 Telegraph Road, Suite 2345, Bingham Farms, Michigan 48025. MSS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. MSS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. MSS is a "debt collector" as the term is defined and/or used in the FDCPA. MMS was licensed (No. 2401001612) by the State of Michigan to collect consumer debts in Michigan, but the license lapsed in 2007. MMS is a "collection agency" and "licensee" as the terms are defined and/or used in the MOC.

**IV. Facts**

5. Ms. Nelson allegedly purchased goods and/or services for personal, family or household purposes via a credit account with Harley-Davidson Financial Services. Any resulting obligation to pay money was a "debt" as the term is defined and/or used in the FDCPA and MOC.

6. The original creditor or a successor in interest claimed that the debt was not paid and hired MMS to collect the allegedly delinquent debt.

7. Alternatively, MMS purchased the debt after the account allegedly became delinquent.

8. Ms. Nelson disputes the debt.

9. Ms. Nelson refuses to pay the debt.

10. On or about October 7, 2010, a MMS employee telephoned Ms. Nelson and left the following message on Ms. Nelson's voice mail: "Victoria, Dan Price, please telephone me. I'm at 800-500-4981. Thanks."

11. On or about October 21, 2010, a MMS employee telephoned Ms. Nelson and left the following message on Ms. Nelson's voice mail: "Hi Victoria this is Sarah. Could you please give me a call back? My number is 1-800-500-4981. Thanks."

12. MMS and its employees telephoned Ms. Nelson for the sole purpose of collecting an alleged debt.

13. Each message left by MMS on Ms. Nelson's voice mail conveyed information regarding a debt directly or indirectly to Ms. Nelson.

14. Each message left by MMS on Ms. Nelson's voice mail was a "communication" as the term is defined and/or used in the FDCPA and MOC.

15. MMS did not disclose in the above-quoted messages left by MMS on Ms. Nelson's voice mail that the telephone call was from a debt collector.

16. By failing to disclose in a message left by MMS on Ms. Nelson's voice mail that the caller was a debt collector, MMS violated the FDCPA, 15 U.S.C. § 1692e(11).

17. When MMS left the above-quoted messages on Ms. Nelson's voice mail, MMS was aware or should have been aware of multiple published federal district court opinions in which the courts held that it is unlawful for a debt collector to leave a recorded message for a debtor/consumer without identifying itself as a debt collector. *See Joseph v. J.J. Mac Intyre Companies, L.L.C.*, 281 F.Supp.2d 1156 (N.D. Cal. 2003); *Hosseinzadeh v. M.R.S. Associates, Inc.*, 387 F.Supp.2d 1104 (C.D. Cal. 2005); *Foti v. NCO Financial Systems, Inc.*, 424 F.Supp.2d

643 (S.D.N.Y. 2006).

18.     MMS is a member of ACA International ("ACA").

19.     ACA is a trade group for debt collectors. According to the ACA website (www.acainternational.org), MMS has been a member of ACA since 1977.

20.     Over the past two or more years, ACA sent multiple writings to its members, including MMS, discussing the various federal district court opinions in which the respective federal courts held that it is unlawful for a debt collector to leave a recorded message for a debtor/consumer without identifying itself as a debt collector.

21.     MMS has been sued in the past for allegedly leaving a recorded message for a debtor/consumer without identifying itself as a debt collector in violation of the FDCPA. See, for example, *David Coleman et ux. v. MS Services, LLC,* United States District Court, Northern District of Georgia, Case No. 1:10-cv-2283.

22.     In October 2010, it was the practice of MMS in connection with the collection of debts to leave a recorded message on the consumer's voice mail or telephone answering machine without disclosing in the message that the telephone call was from a debt collector.

23.     In October 2010, it was the practice of MMS in connection with the collection of debts to leave a recorded message on the consumer's voice mail or telephone answering machine without disclosing in the message that the telephone call was from a debt collector.

24.     In October 2010, MMS when telephoning consumers in connection with the collection of a debt regularly left a message on the consumer's voice mail or telephone answering machine which message failed to disclose that the caller was a debt collector.

25.     MMS left a recorded message on Ms. Nelson's voice mail that did not disclose in

4

the message that the telephone call was from "MS Services, LLC."

26. MMS left a recorded message on Ms. Nelson's voice mail that did not disclose in the message the name of the company placing the telephone call to Ms. Nelson.

27. MMS left a recorded message on Ms. Nelson's voice mail that did not include a meaningful disclosure of the caller's identity, which violated the FDCPA, 15 U.S.C. § 1692d(6).

28. In October 2010, it was the practice of MMS in connection with the collection of debts to leave a recorded message on the consumer's voice mail or telephone answering machine which message did not disclose that the telephone call was from "MS Services, LLC."

29. In October 2010, MMS when telephoning consumers in connection with the collection of a debt regularly left a message on the consumer's voice mail or telephone answering machine which message did not disclose that the telephone call was from "MS Services, LLC."

30. In October 2010, it was the practice of MMS in connection with the collection of debts to leave a recorded message on the consumer's voice mail or telephone answering machine which message did not disclose the name of the company placing the telephone call to the consumer.

31. In October 2010, MMS when telephoning consumers in connection with the collection of a debt regularly left a message on the consumer's voice mail or telephone answering machine which message did not disclose the name of the company placing the telephone call to the consumer.

32. MMS left a recorded message on Ms. Nelson's voice mail that did not reveal in the message the purpose of the telephone call.

33. MMS left a recorded message on Ms. Nelson's voice mail that concealed the

5

purpose of the telephone call.

34. MMS left a recorded message on Ms. Nelson's voice mail that did not reveal in the message the purpose of the communication.

35. MMS left a recorded message on Ms. Nelson's voice mail that concealed the purpose of the communication.

36. The recorded message left by MMS on Ms. Nelson's voice mail concealed or did not reveal the purpose of the telephone call, which violated the MOC, M.C.L. § 339.915(e).

37. In October 2010, it was the practice of MMS in connection with the collection of debts to leave a recorded message on the consumer's voice mail or telephone answering machine which message concealed or did not reveal the purpose of the telephone call.

38. In October 2010, MMS when telephoning consumers in connection with the collection of a debt regularly left a message on the consumer's voice mail or telephone answering machine which message concealed or did not reveal the purpose of the telephone call.

39. In the one-year period immediately preceding the filing of this complaint, MMS left recorded messages on the voice mail or telephone answering machine of more than fifty consumers residing within the State of Michigan, failing to disclose in the message that the communication was from a debt collector.

40. In the one-year period immediately preceding the filing of this complaint, MMS left recorded messages on the voice mail or telephone answering machine of more than fifty consumers residing within the State of Michigan, without stating the name of the company that was placing the telephone call to the consumer.

41. In the one-year period immediately preceding the filing of this complaint, MMS

6

left recorded messages on the voice mail or telephone answering machine of more than fifty consumers residing within the State of Michigan, which messages concealed or did not reveal the purpose of the telephone call.

42. Each time telephoned Ms. Nelson in October 2010, MMS telephoned Ms. Nelson for the purpose of collecting an alleged debt.

43. When MMS and/or its employee telephoned Ms. Nelson in October 2010 and left the message that is quoted above in Paragraph 10 of this complaint, MMS and/or its employee telephoned Ms. Nelson for the purpose of having Ms. Nelson return the call so that MMS could attempt to collect a debt.

44. When MMS and/or its employee telephoned Ms. Nelson in October 2010 and left the message that is quoted above in Paragraph 11 of this complaint, MMS and/or its employee telephoned Ms. Nelson for the purpose of having Ms. Nelson return the call so that MMS could attempt to collect a debt.

45. The MMS employee violated MMS company policy when the MMS employee left the message on Ms. Nelson's voice mail that is quoted above in Paragraph 10 of this complaint because the message did not disclose that the telephone call was from a debt collector.

46. The MMS employee did not violate MMS company policy when the MMS employee left the message on Ms. Nelson's voice mail that is quoted above in Paragraph 10 of this complaint even though the message did not disclose that the telephone call was from a debt collector.

47. The MMS employee violated MMS company policy when the MMS employee left the message on Ms. Nelson's voice mail that is quoted above in Paragraph 11 of this

complaint because the message did not disclose that the telephone call was from a debt collector.

48.     The MMS employee did not violate MMS company policy when the MMS employee left the message on Ms. Nelson's voice mail that is quoted above in Paragraph 11 of this complaint even though the message did not disclose that the telephone call was from a debt collector.

49.     The MMS employee violated MMS company policy when the MMS employee left the message on Ms. Nelson's voice mail that is quoted above in Paragraph 10 of this complaint because the message did not state the name of the company that was placing the telephone call to Ms. Nelson.

50.     The MMS employee did not violate MMS company policy when the MMS employee left the message on Ms. Nelson's voice mail that is quoted above in Paragraph 10 of this complaint even though the message did not state the name of the company that was placing the telephone call to Ms. Nelson.

51.     The MMS employee violated MMS company policy when the MMS employee left the message on Ms. Nelson's voice mail that is quoted above in Paragraph 11 of this complaint because the message did not state the name of the company that was placing the telephone call to Ms. Nelson.

52.     The MMS employee did not violate MMS company policy when the MMS employee left the message on Ms. Nelson's voice mail that is quoted above in Paragraph 11 of this complaint even though the message did not state the name of the company that was placing the telephone call to Ms. Nelson.

53.     The MMS employee violated MMS company policy when the MMS employee

left the message on Ms. Nelson's voice mail that is quoted above in Paragraph 10 of this complaint because the message did not did not reveal in the message the purpose of the telephone call.

54. The MMS employee did not violate MMS company policy when the MMS employee left the message on Ms. Nelson's voice mail that is quoted above in Paragraph 10 of this complaint even though the message did not reveal in the message the purpose of the telephone call.

55. The MMS employee violated MMS company policy when the MMS employee left the message on Ms. Nelson's voice mail that is quoted above in Paragraph 11 of this complaint because the message did not did not reveal in the message the purpose of the telephone call.

56. The MMS employee did not violate MMS company policy when the MMS employee left the message on Ms. Nelson's voice mail that is quoted above in Paragraph 11 of this complaint even though the message did not reveal in the message the purpose of the telephone call.

57. The MMS employee violated MMS company policy when the MMS employee left on Ms. Nelson's voice mail or telephone answering machine the message that is described above in Paragraph 10 of this complaint.

58. The MMS employee did not violate MMS company policy when the MMS employee left on Ms. Nelson's voice mail or telephone answering machine the message that is described above in Paragraph 10 of this complaint.

59. The MMS employee violated MMS company policy when the MMS employee

left on Ms. Nelson's voice mail or telephone answering machine the message that is described above in Paragraph 11 of this complaint.

60. The MMS employee did not violate MMS company policy when the MMS employee left on Ms. Nelson's voice mail or telephone answering machine the message that is described above in Paragraph 11 of this complaint.

61. The MMS employee intended to speak the words he spoke when he left the message on Ms. Nelson's voice mail that is quoted above in Paragraph 10 of this complaint.

62. The MMS employee intended to speak the words she spoke when she left the message on Ms. Nelson's voice mail that is quoted above in Paragraph 11 of this complaint.

63. The acts and omissions of MMS and its employees done in connection with efforts to collect a debt from Ms. Nelson were done intentionally and wilfully.

64. MMS and its employees intentionally and wilfully violated the FDCPA and MOC.

65. As an actual and proximate result of the acts and omissions of defendant and its employees, plaintiff has suffered actual damages and injury, including but not limited to, fear, embarrassment, stress, mental anguish, emotional stress, and suffering for which she should be compensated in an amount to be established by jury and at trial.

**V.    Claims for Relief**

### Count 1 – Fair Debt Collection Practices Act

66. Plaintiff incorporates the foregoing paragraphs by reference.

67. Defendant has violated the FDCPA. Defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

    a) Defendant violated 15 U.S.C. § 1692d by engaging in conduct, the natural

consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b) Defendant violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt; and

c) Defendant violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff.

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b) Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c) Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d) Such further relief as the court deems just and proper.

### Count 2 – Michigan Occupational Code

68. Plaintiff incorporates the foregoing paragraphs by reference.

69. Defendant has violated the MOC. Defendant's violations of the MOC include, but are not necessarily limited to, the following:

a) Defendant violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

b) Defendant violated M.C.L. § 339.915(g) by communicating with a debtor without accurately disclosing the caller's identity; and

c) Defendant violated M.C.L. § 339.915(q) by failing to implement a procedure designed to prevent a violation by an employee.

11

**Wherefore,** plaintiff seeks judgment against defendant for:

a) Actual damages pursuant to M.C.L. § 339.916(2);

b) Treble the actual damages pursuant to M.C.L. § 339.916(2);

c) Statutory damages pursuant to M.C.L. § 339.916(2); and

d) Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).

### Demand for Trial by Jury

Plaintiff demands trial by jury.

Dated: November 17, 2010

/s/ Phillip C. Rogers
Phillip C. Rogers (P34356)
Attorney for Plaintiff
40 Pearl Street, N.W., Suite 336
Grand Rapids, Michigan 49503-3026
(616) 776-1176
ConsumerLawyer@aol.com